IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | | |
|---|---|---|
| JAMES EMORY JONES, | : | CIV. NO. 24-9294 (RMB) |
| | : | |
| Petitioner | : | **OPINION** |
| | : | |
| v. | : | |
| | : | |
| WARDEN R. THOMPSON, | : | |
| | : | |
| Respondent | : | |

RENÉE MARIE BUMB, Chief United States District Judge

This matter comes before the Court upon Petitioner James Emory Jones' ("Petitioner") petition for writ of habeas corpus under 28 U.S.C. § 2241 ("Pet." Dkt. No. 1), Respondent's response in opposition to the petition ("Response to Pet." Dkt. No. 4), Petitioner's first motion for summary judgment ("Petr's First Mot. Summ. J." Dkt. No. 5), Petitioner's second motion for summary judgment ("Petr's Second Mot. for Summ. J." Dkt. No. 6), and Petitioner's Application for Emergency Relief ("Petr's App. for Emergency Relief" Dkt. No. 7). Petitioner challenges the Federal Bureau of Prison's ("BOP") failure to apply his earned time credits under the First Step Act ("FSA").[1] The Court has jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 2241. For the reasons discussed below, the Court will dismiss the petition without prejudice for failure to exhaust administrative remedies.

---

[1] See 18 U.S.C. § 3624(g), Prerelease custody or supervised release for risk and needs assessment system participants.

I.  **THE PETITION**

At the time Petitioner filed his petition, he had earned 315 days of FSA time credits. (Petr's Mem. of Law at 2, Dkt. No. 1-1.) Applying those credits, Petitioner's projected BOP release date was March 17, 2025. (*Id.*) Petitioner, however, alleged his case manager and unit manager refused to apply all his FSA time credits. (*Id.*) In support of his argument, Petitioner attached an exhibit to his petition, a series of electronic messages between himself and staff member Mr. Olsen ("Olsen"). (Pet., Ex. B, Dkt. 1-2 at 6.) Petitioner told Olsen his early release under the FSA was statutorily mandated and could not be denied for lack of space in a halfway house or based on Petitioner's change of plans in his future living arrangements. (*Id.*) Because Petitioner could not immediately use his credits for release to a hallway house, he requested application of his credits to immediate home confinement or earlier supervised release. (*Id.*) Olsen responded that supervision, presumably referring to home confinement, is controlled by Probation, and Petitioner should direct his request to Probation. (*Id.*) Petitioner countered that he wanted his 315 FSA time credits applied toward early supervised release. (*Id.*)

II. **RESPONSE TO THE PETITION**

Respondent contends the Court should dismiss or deny the petition because Petitioner failed to exhaust administrative remedies, and BOP applied the maximum amount of time credits toward early transfer to supervised release. (Resp. to Pet., Dkt. 4 at 1.) Petitioner filed administrative remedies concerning application of FSA

time credits, and BOP responded that Petitioner was not eligible to apply time credits because his risk assessment was higher than "low." (*Id.* at 2.) At the time the response to the petition was filed, Petitioner had not filed an administrative remedy challenging the timing of his placement in an RRC. (Resp. to Pet., Dkt. 4 at 2.)

In the alternative to dismissal for failure to exhaust, Respondent argues the Court should deny the petition because BOP applied Petitioner's FSA time credits, moved his release date up by twelve months, and was working to effect his transfer to a residential reentry center ("RRC.") (*Id.* at 4.) In support of this argument, Respondent submits that although Petitioner earned FSA time credits throughout his incarceration, he was ineligible to apply his credits toward his sentence until August 26, 2024, due to his recidivism score. (*Id.*) BOP applied Petitioner's FSA time credits as soon as he was eligible, which reduced his term in BOP custody by one year. (*Id.*) Congress limited the number of credits applicable toward early transfer to supervised release to 12 months. 18 U.S.C. § 3624(g)(3). (*Id.*)

BOP was unable to prepare for Petitioner's transfer to prerelease custody until Petitioner became eligible through a "minimum" or "low" risk score. *See* 18 U.S.C. §§ 3624(g)(1)(B), (g)(1)(D). (*Id.*) BOP has been working in good faith to make an RRC placement as soon as practicable, a process that was delayed by Petitioner's choice to change the federal district of his release from Maryland to the Eastern District of Virginia. (*Id.*) Respondent maintains that the Court should deny Petitioner relief on his theory that BOP owes him more than twelve months of FSA credit applied toward early supervised release. (*Id.*)

### III.     PETITIONER's MOTIONS FOR SUMMARY JUDGMENT

Petitioner's first and second motions for summary judgment are essentially duplicates, and therefore, the Court will cite only to Petitioner's first motion. (Dkt. Nos. 5 and 6.) Petitioner argues that: (1) he is eligible to apply FSA time credits to his early release to supervision; (2) Respondent failed to establish why his time credits should not be applied; and (3) exhaustion of administrative remedies is not required if it is futile. (Petr's First Mot. for Summ. J., Dkt. No. 5 at 1.) Petitioner submitted his FSA Time Credit Assessment to show he had earned 335 FSA time credits at that time. (Petr's Mem. In Supp. of First Mot. for Summ. J., Ex. B, Dkt. No. 5-2 at 7.) Because he has more FSA time credits available than number of days until his March 17, 2025 FSA projected release date, Petitioner contends he can use these additional time credits toward earlier supervised release. (Petr's Mem. in Supp. of First Mot. for Summ. J., Dkt. No. 5-2. at 7-11.)

Petitioner acknowledged that BOP submitted his RRC package for processing, but it could take up to sixty days to process, and there was no guarantee there would be RRC space available in Virginia. (*Id.* at 9.) Petitioner argues BOP should instead apply his FSA time credits to immediate release to supervision. (*Id.* at 9-11.) Furthermore, Petitioner contests Respondent's allegation that he failed to file an administrative remedy requesting immediate release to supervised release. (*Id.* at 12-14, citing Ex. F, Dkt. No. 5-2 at 21.) He filed such an administrative remedy on September 27, 2024. (*Id.*)

4

## IV. PETITIONER'S APPLICATION FOR EMERGENCY RELIEF

In his application for emergency relief, Petitioner asserts that on December 3, 2024, his "team" told him his referral for RRC placement was on hold for a possible warrant for traffic charges. (Petr's App. for Emergency Relief, Dkt. No. 7 at 1.) Petitioner was able to establish he had no warrants, and BOP continued processing his RRC placement. (*Id.*) Petitioner, however, alleges BOP is using stall tactics to deprive him of early release. (*Id.*)

## V. DISCUSSION

Before a federal inmate can seek habeas relief under 28 U.S.C. § 2241, he ordinarily must first exhaust administrative remedies. *Vasquez v. Strada*, 684 F.3d 431, 433 (3d Cir. 2012). Exhaustion of the BOP administrative remedy program requires: (1) an attempt at informal resolution, 28 C.F.R. § 542.13; (2) a formal administrative remedy request to the warden, § 542.14; (3) an appeal to the BOP Regional Director, § 542.15; and (4) an appeal to General Counsel in the Central Office, *id.*

Contrary to Respondent's assertion, Petitioner established that he filed an administrative remedy request with the warden on September 27, 2024, and he sought application of FSA time credits toward early supervised release to effect his immediate release. (Ex. F, Dkt. No. 5-2 at 21.) Petitioner, however, filed his habeas petition on September 19, 2024, a week before he filed his administrative remedy request with the warden. (Pet., Dkt. No. 1.) "Where a petitioner's failure to exhaust

5

administrative remedies deprives 'the BOP of the opportunity to resolve any errors, to create an administrative record, and to provide a factual and legal basis for its decision' exhaustion is not futile." *Desposito v. Warden, FCI Fort Dix*, No. CV 22-5828 (RMB), 2023 WL 6307443, at *2 (D.N.J. Sept. 28, 2023) (quoting *Clark v. Allenwood*, 665 F. App'x 136, 138 (3d Cir. 2016)).

Moreover, exhaustion is not futile because Petitioner did not raise an issue of pure statutory construction in his petition. *Vasquez*, 684 F.3d at 433-34 ("We have held that a prisoner need not exhaust administrative remedies where the issue presented involves only statutory construction[.]") Instead, he sought equitable relief because he earned more FSA time credits than he could use, due to the delay in processing his RRC placement. (Petr's Mem., Dkt. No. 1-1.) Petitioner's frustration is understandable but does not excuse his failure to exhaust administrative remedies. Exhaustion was not futile, BOP was working toward applying his time credits toward additional time in a residential reentry center.

What's more, even if exhaustion were excused, Congress limited to twelve months the period of time an inmate can apply FSA time credits toward early release to a term of supervised release. 18 U.S.C. § 3624(g)(3) ("the Director of the Bureau of Prisons may transfer the prisoner to begin any such term of supervised release at an earlier date, not to exceed 12 months, based on the application of time credits under section 3632"); *Guerriero v. Miami RRM*, No. 24-10337, 2024 WL 2017730, at *2 (11th Cir. May 7, 2024) (holding the FSA's plain language in 18 U.S.C. § 3624(g)(3) did not entitle the petitioner to more than 365 days of FSA time credits

6

applied towards his sentence.)  Therefore, Petitioner would not succeed on raising a pure issue of statutory construction.

## VI.  CONCLUSION

For the reasons discussed above, the petition will be dismissed without prejudice for failure to exhaust administrative remedies.  Petitioner's motions for summary judgment and his application for emergency relief will be dismissed as moot.

**DATE:  December 30, 2024**

                                  s/Renée Marie Bumb
                                  RENÉE MARIE BUMB
                                  Chief United States District Judge